# United States Court of Appeals for the Federal Circuit

2006-1591

SAMUEL AARON, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Joel K. Simon, Serko Simon Gluck & Kane LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Christopher M. Kane.

Gardner B. Miller, Jr., Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief was Barbara S. Williams, Attorney in Charge. Also on the brief were Peter D. Keisler, Acting Attorney General, and Jeanne E. Davidson, Director, of Washington, DC. Of counsel on the brief was Edward N. Maurer, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

2006-1591

SAMUEL AARON, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  November 16, 2007

_____

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

LOURIE, Circuit Judge.

Samuel Aaron, Inc. ("Aaron") appeals from the decision of the United States Court of International Trade granting the government's motion to dismiss for lack of jurisdiction.  Samuel Aaron, Inc. v. United States, 452 F. Supp. 2d 1302 (Ct. Int'l Trade 2006).  Because the trial court lacked jurisdiction, we affirm.

BACKGROUND

Aaron is an importer of Thai jewelry.  Until 1998, certain imports from Thailand and other developing countries had been eligible for a free rate of duty under the Generalized System of Preferences ("GSP") program.  On June 30, 1998, however, the

GSP expired. Between August 10, 1998, and October 22, 1998, Aaron filed sixty-six entries at the Port of New York ("Aaron's entries"). Upon entry, Aaron paid estimated duties to the United States Bureau of Customs and Border Protection ("Customs"). On October 21, 1998, Congress reinstated the GSP and granted retroactive refunds for certain items that had been imported during the time in which the GSP had lapsed. However, Aaron's imports were not eligible for the retroactive GSP refunds provided for by the statute.

Customs liquidated Aaron's entries on two separate dates, November 13, 1998, and December 11, 1998. Customs liquidated the entries duty-free and refunded, with interest, the estimated duties that Aaron had paid. On January 29, 1999, Customs sent a memorandum to the Port Director instructing reliquidation of all funds that had been erroneously issued for certain Thai imports. Customs subsequently determined that Aaron's entries would need to be reliquidated. Based upon the dates of liquidation, the ninety-day periods during which Customs could legally reliquidate Aaron's entries ended on February 11, 1999, and March 11, 1999, respectively.[1]

On February 8, 1999, Customs placed a document in "a notebook or binder" in Room 112 at the customhouse used by Customs at the Port of New York for making its bulletin notices of liquidation or reliquidation available to the public ("the off-line bulletin notice"). The off-line bulletin notice was entitled "BULLETIN NOTICE of LIQUIDATION" and contained six columns of information: ENTRY TYPE, ENTRY NUMBER, ENTRY DATE, IMPORTER, IMPORTER NUMBER, and REMARKS. The REMARKS column for all of the entries on the off-line bulletin notice stated, "RELIQUIDATION-INCREASE."

---

[1] Customs has ninety days from notice of the original liquidation in which to voluntarily reliquidate an entry. 19 U.S.C. § 1501 (2000).

That document is referred to as the "off-line" bulletin notice by the parties because it was not generated by Customs' Automated Commercial System ("ACS"). The vast majority of bulletin notices at the Port of New York consist of computer printouts generated by ACS on a weekly basis. Those ACS-generated notices, like the off-line bulletin notice, are kept in Room 112, but in binders separate from any off-line notices.

During the week of April 12, 1999, Customs ran a computer script that created an ACS entry for Aaron's entries listed on the off-line bulletin notice. On April 30, 1999, ACS generated a bill for the increased duties due on Aaron's entries. On the same date that the bill was generated, Customs placed an ACS-generated bulletin notice in a binder in Room 112 ("the ACS bulletin notice"). The ACS bulletin notice was entitled "BULLETIN NOTICE OF ENTRIES LIQUIDATED." It contained six columns of information: TYPE, FILER, ENTRY NUMBER, ACTION (increase/decrease), DATE OF ENTRY (with importer's name), and DOCUMENT FILING LOCATION. The ACS bulletin notice contained all but one of Aaron's entries that appeared in the off-line bulletin notice. A reliquidation date of April 30, 1998 appeared on the ACS bulletin notice. Customs failed to red-line or otherwise note on the ACS bulletin notice that reliquidation had been made on another date, as it ordinarily would if reliquidation had occurred on a date other than the date shown on the notice of reliquidation.

Aaron filed a protest on July 29, 1999, to dispute the increased duties. On August 23, 2002, Customs denied that protest as untimely. Aaron then filed a complaint in the Court of International Trade.

The Court of International Trade granted the government's motion to dismiss for lack of jurisdiction. The court explained that the "linchpin issue" was whether there had

been a valid reliquidation of Aaron's entries on February 8, 1999. The court first determined that a final computation of duties, as required by 19 C.F.R. § 159.1 (1999), had occurred on February 8. Next, the court found that the off-line bulletin notice was legally sufficient. Although the court found that the posting of the bulletin notice of reliquidation had been "administratively sloppy," it also found that such sloppiness did not invalidate the notice. Samuel Aaron, 452 F. Supp. 2d at 1309. Based on the fact that a reliquidation had occurred and valid notice had been posted, the court concluded that reliquidation of Aaron's entries occurred on February 8, 1999. Aaron's protest, filed on July 29, 1999, more than ninety days after the date of reliquidation, was therefore untimely, and the court lacked jurisdiction to hear the case.

Aaron timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

This court reviews a dismissal by the Court of International Trade for lack of jurisdiction de novo. Int'l Light Metals v. United States, 194 F.3d 1355, 1361 (Fed. Cir. 1999).

On appeal, Aaron argues that the Court of International Trade had jurisdiction to hear his protest because it was filed within ninety days of April 30, 1999, which Aaron argues was the date on which reliquidation actually occurred. According to Aaron, Customs failed to compute or ascertain the duties due upon reliquidation on February 8, 1999, as required by 19 C.F.R. § 159.1, and therefore no reliquidation occurred on February 8. Aaron further argues that the posting of the off-line bulletin notice was legally insufficient under 19 C.F.R. § 159.2 because it was not posted in a conspicuous

place.  Furthermore, Aaron argues that the off-line bulletin notice was not legally valid because an electronic bulletin notice on Customs Form 4333—as required by 19 C.F.R. § 159.9(a) and 19 U.S.C. § 1500—was not provided until April 30.

The government responds that the Court of International Trade correctly held that it lacked jurisdiction because Aaron failed to file a protest within ninety days of the February 8th reliquidation.  The government contends that Customs completed the final computation of duties owed by Aaron on or before February 8, 1999, thereby legally completing the reliquidation.  The government also contends that the off-line bulletin notice was posted in a conspicuous place at the customhouse.  The government further argues that liquidation bulletin notices need not be posted electronically, nor must they contain the phrase "Customs Form 4333."

We agree with the government that the Court of International Trade correctly held that it lacked jurisdiction to hear Aaron's appeal.  As that court noted, the date of reliquidation is the "linchpin issue" of this case.  Customs has ninety days from the date of liquidation or the notice of liquidation in which to effect a reliquidation of merchandise already liquidated.  19 U.S.C. § 1501.  An importer has ninety days from the notice of reliquidation in which to file a protest, after which time the reliquidation is final and conclusive.  19 U.S.C. §§ 1514(a), 1514(c)(3)(A).  If reliquidation occurred on February 8, 1999, as the government argues, Customs reliquidated the entries within the statutory window granted for voluntary reliquidations, and Aaron's protest was untimely. If, as Aaron urges this court to find, the reliquidation did not occur until April 30, 1999, then Aaron's protest was timely filed, and the Court of International Trade had jurisdiction to hear his complaint.

Thus, we must determine whether Customs effected a legally valid reliquidation on February 8, 1999, and whether the off-line bulletin notice was legally sufficient.

A.    Reliquidation on February 8, 1999

Liquidation is the "final computation or ascertainment of the duties . . . accruing on an entry." 19 C.F.R. § 159.1.[2]  Aaron claims that Customs failed to "compute or ascertain" the duties owed by February 8, 1999.  In support of that contention, Aaron points to an entry that was included in the off-line bulletin notice but was not included in the subsequent ACS bulletin notice.  The omission of that entry, Aaron argues, demonstrates that the final computation of duties owed did not occur on February 8.  Aaron also claims that a small discrepancy between the duty amount refunded for one of Aaron's entries at the original liquidation and the amount billed for that entry on reliquidation demonstrates that the final duty amount was not computed by Customs until April 30.

Aaron's arguments, however, are unpersuasive.  The off-line bulletin notice contained an entry dated after the October 21, 1998 reinstatement of the GSP.[3]  That entry, therefore, was properly liquidated duty-free and never should have been

_____

[2]    Section 159 does not define "reliquidation" and we can find no statutory requirements for voluntary reliquidations other than the notice requirements of 19 C.F.R. § 173.3(b) and 19 U.S.C. § 1501 (which we discuss in detail in Section B) and the proper authority needed to reliquidate under 19 C.F.R. § 173.3(a).  Since the government appears to concede that reliquidations must adhere to the same requirements as liquidations, in this Section A we shall treat them as statutorily interchangeable.

[3]    Aaron also points to an entry that was erroneously included in both the off-line and ACS bulletin notices.  That entry's existence does not help Aaron's case.  An erroneous entry in both notices does not suggest that Customs had not computed or ascertained the duty on Aaron's entries on February 8.  At most, it suggests that Customs improperly reliquidated the entry and failed to catch the error.  Because Aaron did not protest the reliquidation in a timely manner, however, the reliquidation is final. 19 U.S.C. §§ 1514(a), 1514(c)(3)(A).

reliquidated. The subsequent ACS bulletin notice correctly omitted that entry as did Aaron's bill. Aaron urges us to infer that the removal of the entry on the ACS bulletin notice indicates that the final computation occurred some time between the issuance of the two bulletin notices, viz, when Customs ran the computer script on ACS. We find no grounds for making such an inference. Customs admits that the inclusion of the entry at issue in the off-line bulletin notice was an error. That entry entered the U.S. after the renewal of GSP and therefore was entitled to the duty-free treatment that it initially received. Had Aaron felt that Customs erred in reliquidating the entry, it was free to protest such a reliquidation. See 19 U.S.C. § 1514; Juice Farms, Inc. v. United States, 18 Ct. Int'l Trade 1037, 1046 (1994) (liquidation errors are determined via the protest procedure). But Aaron did not protest the entry's erroneous inclusion in the off-line bulletin notice. After running the reliquidated entries through ACS in order to generate billing information and create an ACS record of the reliquidation, the entry was not included in the subsequent ACS bulletin notice or in Aaron's bill. Even if the elimination of an erroneously included entry could have been considered a calculation, Customs still had ascertained the amount due on February 8, even if that amount was later adjusted. An adjustment by Customs—after reliquidation but prior to billing—to correct its own mistake should not invalidate an otherwise proper reliquidation.

Moreover, the discrepancy between the refunded duty amount and the bill upon reliquidation does not prove Aaron's case. One of Aaron's entries contained multiple line items, two that were eligible for duty-free treatment (the "duty-free line items") and one that was not (the "jewelry line item"). In November and December of 1998, Customs liquidated all three line items duty-free. Subsequently, Customs correctly

reliquidated only the jewelry line item. In the trial court, Customs claimed that it had ascertained the final duty owed on Aaron's entries because the duty amount was the same as Aaron had paid upon entry, as well as the same amount (with interest) refunded at liquidation. Aaron argues, however, that the "final" calculation involved subtracting the amount refunded at liquidation for the duty-free line items (which were not reliquidated) from the total amount of the duty paid on Aaron's entries. Aaron claims that that calculation was not performed before Customs ran the script on ACS.

That argument, however, is unavailing. Section 159.1 does not require Customs to bill an importer in order to complete reliquidation; it only requires Customs to compute or ascertain the amount due. 19 C.F.R. § 159.1. Aaron has not shown any evidence that the amount due on each line item (as opposed to each entry) differed from the amount paid on entry and subsequently refunded at liquidation. While it may be true that the ACS script differentiated which line items from each entry were to be reliquidated, the amounts due on each of those line items were indisputably ascertained by Customs before February 8. Also, by February 8, Customs had already determined which items were to be reliquidated (Thai jewelry entered before October 21, 1998). The fact that Customs chose to run a computer script to generate bills after the reliquidation does not violate 19 C.F.R. § 159.1, nor does the fact that the script differentiated between line items to be reliquidated. Thus, the reliquidation on February 8, 1999, complied with 19 C.F.R. § 159.1.

B.    Reliquidation Notice Requirements

Pursuant to 19 U.S.C. § 1500(e), Customs must give notice of any liquidation to an importer "in such form and manner as the Secretary shall by regulation prescribe."

Reliquidations are governed by the same notice requirements. 19 U.S.C. § 1501. The requirements that Customs must adhere to in providing notice of liquidations to importers are outlined in 19 C.F.R. § 159. Voluntary reliquidations, such as the reliquidation in this case, have the same notice requirements as initial liquidations. 19 C.F.R. § 173.3.

Aaron argues that the off-line bulletin notice was legally deficient in three ways. First, the notice was not posted in a "conspicuous" place or another place where it could be easily located; second, it was not on Customs Form 4333; and third, the notice did not provide Aaron with "electronic notice." We address and reject each contention in turn.

### 1. Conspicuous Place

Aaron argues that Customs' off-line bulletin notice did not comply with the requirement set forth in 19 C.F.R. § 159.9(b) that notice be posted in a conspicuous place or other suitable place because it was placed in a "small binder" in a "large room." Aaron claims that there was no reason for an importer to know that the off-line liquidation log existed because it was not updated on a weekly basis and maintained in chronological order as the standard ACS notice log was, and no sign directed importers to the off-line liquidation log. As further evidence of invalidity, Aaron points to Customs' failure to red-line the ACS bulletin notice to reflect the fact that an earlier reliquidation had occurred.

Customs is required to post bulletin notices of reliquidation "in a conspicuous place in the customhouse", or "at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons." 19

C.F.R. § 159.9(b). We have stated that Customs' methods for giving notice under § 159.9(b) are "evaluated according to the standard of a prudent importer or other interested person exercising a reasonable amount of diligence." Frederick Wholesale Co. v. United States, 754 F.2d 349, 352 (Fed. Cir. 1985). Here, the off-line bulletin notice was placed in the same room as the standard ACS-generated reliquidation notices. The off-line bulletin notice was placed in the binder or folder in the room in which all off-line bulletin notices were placed. Although Customs failed to red-line the ACS bulletin notice to reflect the earlier reliquidation date, that oversight alone does not invalidate the off-line bulletin notice. A prudent importer would reasonably have encountered the off-line bulletin notice without being directed to it by the ACS bulletin notice. While ACS-generated notices constitute the vast majority of the liquidation notices posted by Customs, the use of the off-line bulletin notice in this case, a method that Customs has used for over thirty years, is not so extraordinary as to evade a prudent importer exercising reasonable diligence. We thus conclude that under the reasonable importer standard, the off-line bulletin notice was posted in a sufficiently conspicuous place.[4]

### 2. Customs Form 4333

Aaron further argues that the off-line bulletin notice was insufficient because it was not printed on Customs Form 4333 as required under 19 C.F.R. § 159.9(a). Aaron notes that the ACS bulletin notice clearly contains the phrase "Customs Form 4333," whereas the off-line bulletin notice does not. Customs' regulation states that liquidation

---

[4] Aaron further argues that the posting of the off-line bulletin notice violates his due process rights. We find that argument to be unpersuasive for the same reasons detailed above.

notices "shall be made on a bulletin notice of liquidation, Customs Form 4333." 19 C.F.R. § 159.9(a).

We do not agree that the failure to use Form 4333 made the notice invalid. The off-line bulletin notice in this case contained all of the information on Form 4333 including district and port, entry type, entry number, date of entry, importer name, and remarks. The only discernible differences between the form of the off-line bulletin notice and that of the ACS bulletin notice are that the form number does not appear on the off-line bulletin notice, and no document reference number appears on the off-line bulletin notice. However, those differences do not invalidate the notice. Formality need not prevail over substance. A prudent importer would not be confused by the lack of a form number on an otherwise conforming document, or by the lack of a document reference number. All of the vital information on Form 4333 appeared in a similar layout on the off-line bulletin notice. Thus, Customs' failure to include the form number on the off-line bulletin notice did not invalidate that notice.

### 3. Electronic Notice

Finally, Aaron argues that Customs did not provide Aaron with electronic notice of the reliquidation as required by 19 U.S.C. § 1500(e). Aaron claims that Customs is obligated to provide electronic notice to importers. Aaron's argument misinterprets the statute.

Section 1500(e) states that Customs must:

> give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer . . . in such form as the Secretary shall by regulation prescribe.

19 U.S.C. § 1500(e) (1999).

Customs is thus granted the option to <u>either</u> give notice in a manner prescribed by the Secretary <u>or</u> to transmit notice via an electronic data exchange system in a manner prescribed by the Secretary. Nothing in § 1500(e) indicates that Congress intended to take away Customs' traditional notice means, <u>viz</u>, posting bulletin notices in the customhouse. Thus, the plain meaning of the statute gave Customs the option of electronically notifying importers of liquidations; it did not require it. Accordingly, we conclude that the off-line bulletin notice was valid.

## CONCLUSION

For the foregoing reasons, Aaron's protest of Customs' February 8, 1999 reliquidation was untimely, and the Court of International Trade lacked jurisdiction to hear Aaron's complaint.

<u>AFFIRMED</u>